# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRY L. YARRISON, | CASE NO. 1:15-cv-00683-YK-GBC |
| Plaintiff, | (JUDGE KANE) |
| v. | (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | |
| | Docs. 1, 10, 11, 17, 18, 20, 21 |

# REPORT AND RECOMMENDATION

## I.     Procedural Background

On March 11, 2012, Sherry L. Yarrison ("Plaintiff") filed as a claimant for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, 1181-1183f, with a date last insured of December 31, 2016,[1] and disability onset date of December 31, 2011.  (Administrative Transcript (hereinafter, "Tr."), 16). After the claim was denied at the initial level of administrative review, the Administrative Law Judge (ALJ) held a hearing on April 22, 2013.  (Tr. 50-100). On July 2, 2013, the ALJ found that Plaintiff was not disabled within the meaning

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. 42 U.S.C. §§ 415(a) and 416(i)(1). The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." *See* 42 U.S.C. § 416(i)(2); *accord Renfer v. Colvin*, No. 3:14CV611, 2015 WL 2344959, at *1 (M.D. Pa. May 14, 2015).

of the Act.  (Tr. 13-31).  Plaintiff sought review of the unfavorable decision, which the Appeals Council denied on February 7, 2015, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.  (Tr. 1-7).

On April 7, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration ("SSA") denying social security benefits.  (Doc. 1).  On June 5, 2015, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings.  (Doc. 10, 11).  On August 26, 2015, Plaintiff filed a brief in support of the appeal.  (Doc. 17 ("Pl. Brief")).  On September 24, 2015, Defendant filed a brief in response.  (Doc. 18 ("Def. Brief")).  On April 14, 2016, the Court referred this case to the undersigned Magistrate Judge.  On May 20, 2016, the undersigned ordered the parties to submit supplemental briefing (Tr. 20), and on June 15, 2016, Plaintiff filed a supplemental brief wherein Plaintiff's attorney indicated that the argument in the opening brief regarding the ALJ's alleged internet research had no basis in fact or law and asserted that the remaining issue is not waived (Tr. 21).

## II.     Relevant Facts in the Record

### A. Education, Age, Background, and Vocational History

Plaintiff's past relevant work includes work in data entry, as an office manager, and a court clerk.  (Tr. 24-25, 79-81).  Plaintiff was born in September

1955 and classified by the Regulations as an individual of advanced age at the time of the ALJ decision. (Tr. 25); 20 C.F.R. § 404.1563(e).  Plaintiff completed high school and completed an "Intensive Computer Skills and Intensive Office Skills Course" in 1983.  (Tr. 182).

### B. Relevant Treatment History and Medical Opinions

### 1. Diagnostic Reports

An MRI of Plaintiffs brain on March 25, 2009, noted a "moderate number of punctate nonspecific areas of increase flair and T2 signal in the deep white matter." (Tr. 384).  The report noted that this "may" be a small vessel ischemic disease or other demyelinating process.  (Tr. 384). The report also noted small meningioma. (Tr. 384).

On March 18, 2011, Plaintiff had x-rays of her left ankle, and left leg after a fall, which demonstrated no acute osseous injuries (Tr. 297-99).

On January 12, 2012, Plaintiff had an MRI of her brain, which showed mild cerebral atrophy, with a re-demonstration of numerous small non-enhancing lesions in the cerebral white matter.  (Tr. 267, 294-95).  On May 18, 2012, Plaintiff had a biopsy of a skin lesion on her left cheek with a diagnosis of focal folliculitis and marked solar elastosis.  (Tr. 324-25).

On September 20, 2012, Plaintiff had an EMG study related to her complaints of back and neck pain.  (Tr. 326).  The study showed mild acute mid-

lumbar (likely L4) radiculopathy on the left greater than the right, and mild chronic active left CS radiculopathy. (Tr. 326). The study also revealed there was no radiculopathy in the right arm and there was no evidence of polyneuropathy or myopathy. (Tr. 326). A September 28, 2012 MRI of Plaintiff's cervical spine showed moderate cervical spondylosis, with some prominent facet osteoarthropathy on the left. (Tr. 337). On that same date, Plaintiff also had an MRI of her lumbar spine, which demonstrated moderate-sized, broad based, focal right paracentral disc protrusion/extrusion at L4-L5. (Tr. 339).

## 2. Clinton Medical Associates

In a progress report from dated August 19, 2011, it was noted that Plaintiff no longer took Neurontin for her left side face/neck pain, and reported feeling "great." (Tr. 284). On November 11, 2011, Plaintiff reported that her headaches were controlled with Topomax, that she was "doing well" with pain on the left side of her face and neck, and only had facial pain and neck stiffness occasionally. (Tr. 280). On January 8, 2012, Plaintiff reported an increase in headaches, and complained of left-sided neck and facial pain, low back pain, and left knee pain with a lump. (Tr. 279). Plaintiff reported that her knee pain was due to tripping and falling over her dog and that she injured her back while trying to pull her mother up from the floor. (Tr. 279).

///

### 3. Mount Nittany Physician Group: Emile Roy, M.D.

On February 23, 2012, Plaintiff reported neck pain and Dr. Roy observed that Plaintiff was alert, fully oriented, had a normal gait, had normal balance and muscle tone, and observed that Plaintiff's motor strength in both her upper and lower extremities was normal. (Tr. 271-72, 301-302). Dr. Roy assessed neck pain, a common migraine, and atypical face pain. (Tr. 272). Dr. Roy opined that Plaintiff was "overall stable neurologically," and recommended that she schedule a follow-up visit in three months, and take Methocarbamol and Tramadol as needed. (Tr. 272).

On May 30, 2012, Plaintiff reported experiencing headaches once per week with a severe one once per month, and also reported a decreased range of motion in her neck. (Tr. 334). Dr. Roy observed that Plaintiff's gait was normal; coordination of her arms was normal; and her motor strength was 5/5 in all major muscle groups of both her arms and legs. (Tr. 335). He increased Plaintiff's Topomax dosage, and instructed her to return in three months. (Tr. 335).

On August 28, 2012, Plaintiff sought follow-up treatment for her pain and headaches. (Tr. 332). Plaintiff reported that she was not doing well because she had an increase in posterior cervical spine pain, and also had elbow pain, low back pain and numbness. (Tr. 332). Upon examination, Plaintiff was alert, and although her gait was narrow and slow, the coordination of her arms was normal;

her motor strength was 5/5 in all major muscle groups for both her arms and legs; and her muscle tone was normal in her limbs, without rigidity or spasticity. (Tr. 333). Dr. Roy increased Plaintiff's Topamax dosage to help with her headaches and pain, and ordered an MRI of her cervical and lumbar spines. (Tr. 333).

On October 3, 2012, Dr. Roy reviewed the September 2012 MRIs. (Tr. 367). Plaintiff reported that the increased dosage of Topomax had been helpful for her headaches. (Tr. 367). Dr. Roy noted that Plaintiff had a normal gait, and she was asymptomatic for neck pain. (Tr. 368). Dr. Roy also noted that Plaintiffs primary care physician, Dr. Greenberg, had been giving Plaintiff therapeutic injections for her neck and back, which have provided relief. (Tr. 368). Dr. Roy noted that Plaintiff could use heat or ice for ten minutes twice a day and over the counter icy-hot cream three times a day. (Tr. 368). He further stated that Plaintiff should follow up in six weeks, and made a referral for physical therapy and pain management. (Tr. 368).

### 4. State Agency Consultative opinion: Gerald A. Gryczko, M.D.

On April 16, 2012, Dr. Gryczko reviewed Plaintiffs records and opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. (Tr. 107-108). Dr. Gryczko also opined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel and crouch; but never climb

ladders/ropes/scaffolds or crawl.   (Tr. 108).   With regard to environmental limitations, Dr. Gryczko opined that Plaintiff should avoid concentrated exposure to noise and hazards such as machinery and heights.  (Tr. 108-109).

### 5.  Michael R. Greenberg, M.D.

On November 5, 2012, Dr. Greenberg, completed a physical capacities evaluation check box form, where he noted that Plaintiff could stand, walk, and sit for 30 minutes at a time; sit a total of 2 hours in an 8-hour workday; walk a total of 2 hours in an 8-hour workday; and stand a total of 1 hour in an 8-hour workday. (Tr. 382).  He also opined that Plaintiff could occasionally lift and carry up to 5 pounds, perform fine manipulation on a limited basis, perform simple grasping on a repetitive basis; but could not push or pull arm controls or use her feet for repetitive movements such as pushing and pulling.  (Tr. 382).  Dr. Greenberg also opined that Plaintiff could occasionally reach, but could not bend, squat, crawl, or climb.  (Tr. 382).  He also opined that Plaintiff had moderate restrictions with regard to driving automotive equipment and mild restrictions with regard to unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, and exposure to dust, fumes, and gases.  (Tr. 382).

### III.   Legal Standards and Plaintiff's Alleged Errors

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant

satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  The ultimate burden of proving disability under the Act lies with the claimant.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

With due deference to the Commissioner's construction of social security rulings and regulations, the court may reverse the Commissioner's final determination if the ALJ did not properly apply the legal standards.  *See* 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-67 (2012) (deference to agency interpretation of its own regulations); *Sanfilippo v. Barnhart*, 325 F.3d 391, 393 (3d Cir. 2003) (plenary review of legal questions in social security cases); *see also Witkowski v. Colvin*, 999 F. Supp. 2d 764, 772-73 (M.D. Pa. 2014) (citing *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 91 (3d Cir. 2007)).  The court may also reverse the Commissioner or substantial evidence does not support the ALJ's decision.  *See* 42 U.S.C. § 405(g); *see also Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir.1986).  Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### A. Step Three Non-Severe Impairments

Plaintiff argues that the ALJ erred in finding that Plaintiff's medical conditions of migraine headaches, acute mid-lumbar radiculopathy, chronic active CS radiculopathy, numbness in the bilateral extremities, mild cerebral atrophy and small vessel ischemic disease constituted non-severe impairments.  Pl. Brief at 6-7. As support, Plaintiff cites the March 2009 and January 2012 MRIs and states that the March 2009 MRI report is "consistent with verification of numerous mini strokes."  Pl. Brief at 6.  Plaintiff also states that "various EMG's and nerve conduction studies" were consistent with mild acute mid-lumbar radiculopathy and "there was a mild chronic left C8 radiculopathy."  Pl. Brief at 6.  Plaintiff also argues that Dr. Greenberg's November 2012 opinion is "contrary to the findings of the [ALJ] . . . [and] consistent with the objective medical findings in this case and further consistent with [Plaintiff] being limited to sedentary work."  Pl. Brief at 7. The ALJ determined that Plaintiff had an RFC to:

perform light work as defined in 20 CFR 404.1567(b). She is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching and climbing on ramps and stairs. [Plaintiff] must avoid occupations that require climbing on ladders, ropes and scaffolds and crawling. She is limited to occupations that require no more than occasional overhead reaching, pushing and pulling with the upper extremities to include the operation of hand levers and overhead work. [Plaintiff] is limited to occupations that require no more than occasional pushing and pulling with lower extremities to include the operation of pedals. She must avoid concentrated prolonged exposure to excessive background noise and hazards such as dangerous machinery and unprotected heights.

(Tr. 21).

At step two of the five-step sequential inquiry, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is severe only if it significantly limits the claimant's physical or mental ability to do "basic work activities," *i.e.*, physical abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b).

A "severe" impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the

claimant's ability to work, regardless of the claimant's age, education, or work experience. *See Bowen*, 482 U.S. at 149-51. The claimant has the burden of showing that an impairment is severe. *Bowen*, 482 U.S. at 146 n. 5. Moreover, objective medical diagnoses alone are insufficient to establish severity at step two; a claimant must also present evidence that these limitations significantly limited his or her ability to do basic work activities or impaired his or her capacity to cope with the mental demands of working. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521(a), 416.921(a); *see also Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144-45 (3d Cir. 2007).

If a claimant has any severe impairment, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g), 416.920(d)-(g). A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two and all impairments are considered at step four when setting the residual functional capacity. *See* 20 C.F.R. §§ 404.1523, 416.923 and 404.1545(a)(2), § 416.945(a)(2); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005); *Shannon v. Astrue*, No. 4:11-CV-00289, 2012 WL 1205816, at *10-11 (M.D. Pa. Apr. 11, 2012); *Bell v. Colvin*, No. 3:12-CV-00634, 2013 WL 6835408, at *8 (M.D. Pa. Dec. 23, 2013).

Ultimately, the outcome of the case depends on the demonstration of the functional limitations of the impairment. *See Alexander v. Shalala*, 927 F. Supp.

785, 792 (D. N.J. 1995) *aff'd sub nom. Alexander v. Comm'r of Soc. Sec.*, 85 F.3d 611 (3d Cir. 1996); *accord, Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006). Where the ALJ finds that Plaintiff suffers from a severe impairment, any failure on the ALJ's part to identify other conditions as severe or precisely name the severe impairment does not undermine the entire analysis, when ultimately the ALJ properly characterized the symptoms and functional limitations. *See e.g.*, *Lambert v. Astrue*, No. Civ. A. 08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009); *Alexander v. Shalala*, 927 F. Supp. 785, 792 (D. N.J. 1995) *aff'd sub nom. Alexander v. Comm'r of Soc. Sec.*, 85 F.3d 611 (3d Cir. 1996); *Faircloth v. Colvin*, No. Civ.A.12–1824, 2013 WL 3354546, at *11 (W.D.Pa.2013), *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step"); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("[T]he ALJ considered any limitations posed by the [impairment] at Step 4 . . . any error that the ALJ made in failing to include the [impairment] at Step 2 was harmless").

Other than asserting she should be given a sedentary RFC, Plaintiff fails to explain what additional limitations results from Plaintiff's alleged migraine headaches, radiculopathy, mild cerebral atrophy, and small vessel ischemic

disease.  Pl. Brief at 6-7.  As mentioned above, objective medical diagnoses alone are insufficient to establish severity at step two; a claimant must also present evidence that these limitations significantly limited his or her ability to do basic work activities or impaired his or her capacity to cope with the mental demands of working.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521(a), 416.921(a); *see also Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144-45 (3d Cir. 2007).  As summarized above on August 19, 2011, it was noted that Plaintiff no longer took Neurontin for her left side face/neck pain, and reported feeling "great."  (Tr. 284). On November 11, 2011, Plaintiff reported that her headaches were controlled with Topomax, that she was "doing well" with pain on the left side of her face and neck, and only had facial pain and neck stiffness occasionally.  (Tr. 280).  On February 23, 2012, Dr. Roy observed that Plaintiff was alert, fully oriented, had a normal gait, had normal balance and muscle tone, and observed that Plaintiff's motor strength in both her upper and lower extremities was normal.  (Tr. 271-72, 301-302).  Dr. Roy opined that Plaintiff was "overall stable neurologically."  (Tr. 272). On May 30, 2012, Dr. Roy observed that Plaintiff's gait was normal; coordination of her arms was normal; and her motor strength was 5/5 in all major muscle groups of both her arms and legs.  (Tr. 335).  (Tr. 335).  On August 28, 2012, Plaintiff was alert, and although her gait was narrow and slow, the coordination of her arms was normal; her motor strength was 5/5 in all major muscle groups for both her arms

and legs; and her muscle tone was normal in her limbs, without rigidity or spasticity. (Tr. 333). On October 3, 2012, Plaintiff reported that the increased dosage of Topomax had been helpful for her headaches. (Tr. 367). Dr. Roy noted that Plaintiff had a normal gait, and she was asymptomatic for neck pain. (Tr. 368). The ALJ correctly noted that there "was no diagnosis of intractable migraine." (Tr. 19).

To the extent Plaintiff argues that the ALJ should have credited Dr. Greenberg's November 2012 opinion, Plaintiff's sparse brief on the issue is unpersuasive.[2] The weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4). Weight accorded to a medical opinion depends on the degree to which the opinion is supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(c)(2); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The more an opinion presents

---

[2] The Court reminds Plaintiff that Local Rule 83.40.4(b) requires that in social security cases, a Plaintiff's brief "shall set forth . . . the specific errors committed at the administrative level which entitle plaintiff to relief." M.D. Pa. Local Rule 83.40.1. Local Rule 83.40.4(b) elaborates that "[a] general argument that the findings of the administrative law judge are not supported by substantial evidence is not sufficient." *Id.*; *cf. Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008) (explaining that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a 'showing,' rather than a blanket assertion, of entitlement to relief and, as a threshold requirement, the plain statement of pleadings must possess enough heft to show that the pleader is entitled to relief). Failure to adequately raise an issue results in its waiver. *See Kiewit Eastern Co., Inc. v. L & R Construction Co., Inc.*, 44 F.3d 1194, 1203–04 (3d Cir. 1995) (upholding a district court's finding that a party had waived an issue when a party only made vague references to the issue).

medical signs and laboratory findings to support his medical opinion, the more weight it is entitled. *See id.* Likewise, the more consistent a physician's opinion is with the record as a whole, the more weight it should be afforded. *See id.* Medical opinions consisting largely of checked boxes absent of narrative citing to reasons and evidence to support findings are afforded less weight than opinions which include detailed narratives citing to objective medical evidence. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (explaining more weight is given to opinions that include objective medical evidence); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993) ("[F]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Knox v. Comm'r of Soc. Sec.*, 365 Fed. Appx. 363, 367-67 (2010) (finding that ALJ properly discounted treating physician's check-list opinion because its conclusions were not supported by objective narrative of any specificity).

The ALJ properly considered, in totality, the objective medical evidence, in addition to evidence regarding Plaintiff's activities, testimony, and other information provided by treating and examining doctors. The ALJ reasonably relied on medical expert opinion which evaluated the medical evidence, and concluded that it did not substantiate Plaintiff's claims regarding the severity of her limitations. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (state agency physicians are "highly qualified" and "experts" in social security disability

evaluation.); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof"); 42 U.S.C.A. § 1382c(a)(3)(H)(i).

In this instance, substantial evidence supports the ALJ's findings regarding Plaintiff's non-severe impairments.

## IV.     Recommendation

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate.

Accordingly, it is HEREBY RECOMMENDED:

I.      This appeal be DENIED, as the ALJ's decision is supported by

substantial evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a Magistrate Judge's proposed
> findings, recommendations or report addressing a motion or
> matter described in 28 U.S.C. § 636 (b)(1)(B) or making a
> recommendation for the disposition of a prisoner case or a
> habeas corpus petition within fourteen (14) days after being
> served with a copy thereof. Such party shall file with the clerk
> of court, and serve on the Magistrate Judge and all parties,
> written objections which shall specifically identify the portions
> of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The
> briefing requirements set forth in Local Rule 72.2 shall apply.
> A Judge shall make a de novo determination of those portions
> of the report or specified proposed findings or
> recommendations to which objection is made and may accept,
> reject, or modify, in whole or in part, the findings or
> recommendations made by the magistrate judge. The Judge,
> however, need conduct a new hearing only in his or her
> discretion or where required by law, and may consider the
> record developed before the magistrate judge, making his or her
> own determination on the basis of that record. The Judge may
> also receive further evidence, recall witnesses or recommit the
> matter to the Magistrate Judge with instructions.

Dated: August 2, 2016                    _____s/Gerald B. Cohn_____
                                                        GERALD B. COHN
                                              UNITED STATES MAGISTRATE JUDGE